Upon the first point the judges were divided, and delivered opinions upon it. On the other points they concurred in opinion, and on these points Moncure, P., delivered the judgment of the court.
Moncure, P.
The first error assigned in this case is, the refusal of the court to remand the accused for examination before a justice of the peace, when he was arraigned, to answer the indictment found against him.
This assignment of error rests upon the view, that, as the law now stands, a person accused of felony, no matter how accused, and even though accused by an indictment found by a grand jury in a court of competent jurisdiction to try him, is yet entitled, as matter of right, to be examined by a justice of the peace before he can be put upon his trial.
’With all deference for the opinions of those who differ with me, I think that view of the law is unsound.
The question arises as to the true construction of the act passed April 27, 1867, entitled “An act to revise and amend the criminal procedure.” Acts of Assembly 1866-’67, pp. 915-946, chap. 118.
This act made radical changes in the code of criminal procedure. Its main intent was to expedite the trial of persons charged with crime, and thus to prevent the unnecessarily long confinement of such persons in jail, and to save unnecessary expense to the Commonwealth. Its chief inducement, no doubt, was the effect produced by the. abolition of slavery, in making it necessary that white people and negroes, being-put upon an equality in this respect, should be prosecuted, tried and punished in the same manner.
The cardinal changes thus made by the act were r *746 the abolition of examining courts, and giving tp the county and corporation courts, at any term thereof, exclusive jurisdiction in trials for felony, except that a person to be tried for a felony punishable with death, or for any one of certain other enumerated felonies, may, upon his arraignment in the County or Corporation court, demand to be tried in the Circuit court having jurisdiction of the said pounty or corporation^ but no such demand shall be allowed in any Corporation or Hustings court held by a judge, and in which, by especial statute, capital felonies may now be tried. Chapter 205 of the Code of 1860, concerning “ examining courts,” was entirely repealed, and nothing was enacted in its stead. The same may be said of chapter 212, “of proceedings against negroes.” The other chapters, concerning criminal procedure, to wit: chapters 201, 202, 203, 204, 206, 207, 208, 209, 210 and 211, were amended and reenacted, making no further changes in the substance or language of the old law than seemed to be required by the intent and object of the new. Several sections of these chapters, as they ■stood in the Code, were copied with little or no change in the amendatory act, although they were originally prepared with reference to the system of criminal procedure which then existed, and especially to the institution of examining courts, which formed an important part of that system; but which, as we have seen, was abolished by the amendatory act. "We must bear this fact in mind in construing this act, and so interpret these sections as to give effect, as far as we can, to the intent and meaning of the Legislature.
Two of the sections referred to being those on which, chiefly, the question we are now considering arises, are §§ 15 and 16, of chapter 207, which, as they stand in the amendatory act of 1866-’67 (Session Acts p. 929), :are in these words:
15. Upon a presentment, indictment or information *747 •of a felony, for which, the party charged has not been .arrested, the presiding judge or justice shall issue a warrant to any sheriff, sergeant or constable, commanding him to arrest such parly and carry him before a justice of the county or corporation in which he ought to be tried, and to summon the witnesses on whose information the presentment, indictment or information was made, to appear and testify before the justice. ’The justice to whom such warrant is returned, shall proceed in the case as if the warrant had been issued by himself.
16. When a presentment is made or indictment found in a case, other than that provided for in the preceding section, if it be in a Circuit court, a copy of such presentment or indictment, and of all papers relating to the case, shall be certified by the clerk to the •court of the county or corporation in which the offence is charged to have been committed. Upon such pre■■sentment or indictment, and upon any like presentment or indictment made or found, or information filed in such County or Corporation court, process shall be awarded by the court, or be issued by the clerk thereof, in vacation. Such process, if the prosecution be for a felony, shall be a capias; if it be for a misdemeanor, for which an infamous or corporal punishment may be inflicted, it may be a capias or a summons, at the discretion of the court; in all other cases it shall be, in the first instance, a summons; but if a summons be returned executed, or two be returned not found, and the defendant do not appear, the court may award a ■capias. All copies certified under this section shall be used with the same effect as the originals.
The counsel for the plaintiff in error insist, that under the 15th section, a party charged with a felony is entitled of right to an examination before a justice of the county or corporation in which he ought to be fried, 'before he can be put upon his trial, just as 'he *748 would have been entitled to an examination by an ex-^mining court under the former law; although one of counsel seemed to think that, to sustain that construction of the 15th section, it would be necessary to disregard and strike out of the 16th section the words n “if the prosecution be for a felony (such process) shall be a capias.”
. I differ with the learned counsel in this construction, and think that a party charged with felony is not entitled, as matter of right, to an examination by a justice-before he can be put upon his trial, according to the true construction of the law as it now stands. And this view seems to me to be strongly sustained, both by* reason and authority. It would require plain language to' satisfy me that the Legislature, while they expressly abolished examining courts, at the same time intended’ to put a single justice in the place of such courts— that is, in the. place of a court of five justices. This= would be contrary to the plain policy of the amendatory act, which was to avoid unnecessary delay and expense by abolishing examining courts and otherwise^ These courts were in existence in Virginia for a very long period, and were held in high esteem by the public. They were originally established, no doubt, to secure to an accused the benefit of an examination by a court of the county in which the offence was charged-to have been committed (generally his own county), before he could be sent to the General court (which might be held at a great distance from him) for trial.. Afterwards, when the jurisdiction of the General court in the trial of criminal cases was distributed among-the District courts, the same reason existed, though not to so great an extent, for the continuance of examining courts; and they were accordingly continued during-the existence of those courts. And even after those-courts were abolished, and their jurisdiction in criminal cases was transferred to superior courts held in the? *749 counties and corporations respectively; though the reason which had previously existed for the institution of examining courts then apparently ceased to exist, yet the public had become so wedded to the institution by long use and habit, that it was continued in existence down to its abolition by the act of 1866-’67. The examination of an accused, by a justice of the peace, was never considered in Virginia as a matter of right, but merely as a means to an end: that is, as a means of bringing the accused to justice, and giving him the benefit of an examining court, to which he was entitled by law, and which could only be called by the warrant of a justice of the peace. When examining courts were abolished, the necessity for a preliminary examination by a justice of the peace, in order to the constitution of such a court, also ceased; and there was then no occasion for an examination by a justice, except as •a means of bringing the accused to justice.
Generally, a prosecution for felony is commenced by a complaint before a justice of the peace, and a warrant issued by him to arrest the accused and bring him before the same or some other justice to be examined and disposed of according to law; and this is the case as well now as it was before the abolition of examining courts. It is the most convenient mode of bringing •the accused to justice; that is, of compelling him to answer an indictment found, or to be found, against him, in a court of competent jurisdiction for his trial. But where he is already in the custody of the court in which such an indictment is so found, or can be brought into such custody by a capias, issued under the 16th ■section of the act, to compel him to answer the indictment, there is no occasion for any examination by a .justice. And now let us see which of these two conflicting constructions of the. act—that of the counsel of the accused, or that which I maintain—is more con *750 formable to the terms of the 15th 'and 16th sections, and of the other parts of the act.
The 15th section was intended to apply, and expressly does apply, only to a case of felony. “ Upon a presentment, indictment or information of a felony,” is the language in which it commences. And it thus proceeds : “ For which the party charged has not been arrested, the presiding judge or justice shall issue a warrant.” From which it is argued that whenever the party charged, whether it bo in a court of competent jurisdiction to try him, or any other court, has not been arrested, a bench warrant, and not a capias, must of necessity be issued against him. By reference to 1 B,ev. Co. 1819, p. 605, ch. 169, § 20, we see the source from which § 15 of the present law was derived; and we plainly see the original meaning and object of the provision. It there commences thus: “ When a presentment shall be made by a grand jury of this Commonwealth in any of the Superior courts thereof having criminal jurisdiction, of a felony committed by any person, and the person so presented would be entitled to a trial before an examining court of his or her county, it shall be the duty of the judge who presides, when such presentment is made, to issue his warrant,” &c. All persons charged with felony were then entitled to the benefit of an examining court. So that the provision applied to cases only in which the party presented had not had such benefit, and one of the objects, if not the main object of the provision, plainly was to secure to him that benefit. In the act of 1847-8, Acts of Assembly, pp. 93-164, called the “ Criminal Code,” this provision is revised, amended and embodied, and constitutes section 16 of chapter 20 of that Code. That section - made some formal, but no very material change of the former law. Instead of saying, as § 20 of the act of 1819 did, “ and the person so presented would be entitled to a trial before an examining court,” *751 it said, “ for which the party charged therewith shall not have heen already arrested.” How, this was a merely verbal, and not a material change of the act of 1819. A party who had heen examined had, of necessity, already heen arrested; whereas, a party who had not heen examined, had not, at least as a general thing, already heen arrested. And the Legislature of 1847-8, in saying, “ shall not have heen already arrested,” intended in effect to say, “ would he entitled to a trial before an examining court.” Perhaps the meaning would have heen plainer if the language of the old law had remained unchanged; hut I am confident that no change of meaning was intended by the change made in the language. Another, and perhaps the only other change made by § 16, chapter 20 of the “ Criminal Code,” may he considered of more importance. It required the party, when arrested, to he carried before some justice of the peace of the county or corporation in which the offence might he charged to have heen committed, in order that the case might he proceeded with in the same manner as if the arrest had heen by virtue of a warrant originally isued by him; whereas § 20 of the act of 1819 required the party, when arrested, to he committed to the jail of the county where the of-fence might he charged to have heen committed; whereupon the jailor was required to notify some justice of the peace of the county, thereof, who was required to issue his warrant for summoning a court of' examination, as in other cases. How this change is not so material -as would seem to he supposed, if in fact it he of any materiality. It seems to he supposed, that it tends to show that the Legislature of 1847-8 thereby recognized that a party charged with a felony was entitled, in all cases, and notwithstanding he may have been presented therefor by a grand jury, not only to the benefit of an examining court, hut also to the-. *752 benefit of a preliminary examination by a justice of the peace. In other words, that this latter examination was an independent right of the accused, and not a mere incident of the examining court. Such, I think, was plainly not the fact. The Legislature of 1819 considered the presentment of the grand jury as a sufficient foundation for calling a court of examination, and therefore directed the accused to be committed to jail, and the jailor to notify a justice of the fact, and the justice to issue his warrant to summon a court. The Legislature of 1847-8' no doubt agreed with that of 1819 in so considering; but it occurred to them that it would be one link less in the chain of proceeding to carry the accused directly before a justice, instead of committing him to jail, and that the accused might avoid being committed to jail by satisfying the justice of his innocence of the offence charged, or at least by giving bail, if the offence was a bailable one; and therefore the change was made.
The 16th section of chapter 20 of the act of 1847-8, was copied, almost literally, into the Code of 1849, at least only verbal changes were made therein; and the same provision remained unchanged, until the passage of the act of 1866-7. In the Codes of 1849 and 1860, it formed the 15th section of ch. 207. And in the act of 1866-7, the same provision, as then amended, forms the same section of the same chapter.
Why, then, it may be asked, was the provison retained at all in that act, since the examining courts, which had chiefly, if not entirely, been the cause of its adoption originally, were thereby themselves abolished? And why were the words “indictment or information” inserted in the section as it is embodied in that act?
Although the chief office of the provision was to afford a means of having a person presented of felony carried before an examining court, to the benefit of *753 which, he was entitled, before he could be tried for the offence, yet that was not its only office. It served another purpose, which it might continue to serve, and with more effect, under the act of 1866-7. A person might be presented of a felony in a court which had no jurisdiction of the case; and then it was necessary to have the accused arrested and carried before a justice of the county in which the offence was charged to have been committed, in order that it might be prosecuted there. In such a case, of course it would have been improper to issue a capias, and the only mode of causing an arrest and carrying on the prosecution, was by issuing such a warrant as is directed to be issued by the provision in question. That this was one of the purposes of the provision, is plainly apparent from its very words, which direct the accused to be carried before “a justice of the county or corporation in which he ought to be tried; ” not “ in which he was presented: ” thus showing that the Legislature had in their contemplation cases in which a felony committed in one county might be presented in another. The language of the provision, from its first adoption in our code of criminal procedure, has been substantially the same in this' respect. This useful purpose of the provision, as I have already said, it may continue to serve, and with more effect, under the new act. For there is now occasion for it, not only where a person is presented of a felony committed in another county, but also where he is presented in a Circuit court of a felony committed in the same county in which the court is held. In either case, a bench warrant, as it is called, is necessary, or at least convenient, as a means of securing the arrest and prosecution of the accused. The Circuit courts have now no jurisdiction to try felonies, except certain cases to be brought before them in a certain manner prescribed by law. Therefore, the provision has been retained in the present law. But, it may be *754 said, that the Legislature might have directed an in~ dictment found in a Circuit court, for a felony committed in the county in which the court is held, to be cer^ified to the County court of such county for trial, as is provided in the case of an indictment for a misdemeanor. Still, the case of a presentment for a felony committed in another county would be left unprovided for. And even in the case of a felony committed in the same county, if the indictment were directed to be certified to the County court for trial, some time would necessarily elapse before a capias could be awarded by the county court in such case, during which time there would be danger of an escape from justice by the accused. The provision in question, which the Legislature of 1866-7 found already in the code of criminal procedure which they were then revising, seemed to answer well the purpose in view, and it was therefore retained, as everything in the former law was which did not plainly conflict with the scheme which they contemplated in making the revision.
As to the words “indictment or information,” inserted in the 15th section of the amendatory act, these words were no doubt inserted after the word presentment (which alone was used as descriptive of the form of the charge in the provision as it stood in former laws), because it had just been said, in the 1st section of the same chapter as amended, that “ prosecution for offences against the Commonwealth, unless otherwise qirovided, shall be by presentment, indictment or information; ” and conformity seemed to require that the same words should be used in the 15th section. The Legislature may .have supposed that the word “presentment” did not comprehend “indictment,” as it does; and it was used in that comprehensive sense, in ’ the provision as it stood in former laws. As to the word “information,” it was not comprehended in the word presentment, and it could only have been used. *755 for conformity, as before stated, and because it might happen that an information might be filed charging a person with felony, merely for the purpose of having him arrested by a beuch warrant and carried before a justice of the proper county for prosecution. It could, have been inserted for no other purpose, because a person cannot be prosecuted for felony by information, but only by indictment. See § 2, chap. 207 of the amended act, and Matthews’ and Garner’s cases, 18 Gratt. 989.
And now let us examine the next, or 16th, section of chapter 207, hereinbefore • set out, and enquire what effect that has upon the question under consideration. I think it strongly confirms my view of that question. It commences thus: “When a presentment is made, or indictment found, in a case other than that provided for in the preceding section, if it be in a Circuit court, a copy of such presentment or indictment, and of all papers relating to the case, shall be certified by the clerk to the court of the county or corporation in which the offence is charged to have been committed.” We notice here that the word “information,” which occurs in the preceding section, is dropped in this. Why so, does not appear, unless it was because an information, being a mere charge drawn by the attorney for the Commonwealth, the Legislature supposed, that instead of directing an information to be certified from one court to another, for the purpose of having process issued thereon; a simpler process would be to file a new information in the court of the county in which the offence is charged to have been committed. Still no means are provided for causing the new information to be filed. This omission of the word “information” is more strange when we see that it occurs in the section as it stood in the act of 1847-8, and in the Codes of 1849 and 1860, while the word “indictment” does not there occur, though it is expressed in the sec *756 tion as it stands in the present law. "Why it does not-occur, is explained by the fact that the word was there used in its generic sense, which comprehends an indictment. The words “presentment” and “indictment,” as used in the commencement of § 16 of the present law, refer only to presentments and indictments made or found in a Circuit court and in cases of misdemeanor. That they are so confined as to a Circuit court, is expressly declared in the section. That they are so confined as to cases of misdemeanor, is apparent from the words, “ other than that provided for in the preceding section;” the case there provided for being only a case of felony. These words “presentment” and “indictment” have not here precisely the same application which the words “presentment” and “information” have in the corresponding section of the act of 1847-8, and the Codes of 1849 and 1860. That is, the words “ other than that provided for in the preceding section,” have not precisely the same meaning or effect in the present law which they had in those Codes. As there used they served to show that the words “presentment” and “information,” in the 16th section, referred not only to all cases of misdemeanor, but also to certain cases of felony; that is, a case of felony other than that provided for in the preceding section, which was a felony for which the party had not “been arrested,” according to the language of the act of 1847-8, and the Codes of 1849 and I860, or for which - he “would be entitled to a trial before' an examining court,” according to the language of the Code of 1819; which, as we have seen, meant the same thing. That the words “presentment” and “information,” as used in the 16th section of chapter 207 of the Code of 1849, were intended to refer to certain cases of felony, is shown by the fact that the revisors, in their report, supposing that there was a conflict between §§ 16 and 17 of the *757 •20th chapter of the act of 1847-8, recommended that it should be avoided by inserting certain words in the 16th section of chapter 207 of the Code (which corre .sponds with the 17th section of chapter 20 of the act ■of 1847-8), so as plainly to confine the operation of that section to cases of misdemeanor. But the Legislature rejected their proposed amendment, and instead of the words recommended by them, inserted the words “ in a case other than that provided for in the .preceding section,” which we find in the law as it now ■stands. Thus showing clearly that the 16th section was intended to embrace in its operation a case of felony not embraced in the operation of the 15th section; andas that section, as we have seen, was confined to a presentment of a felony for which the party charged had not been arrested; that is, had not had ■the benefit of a trial before an examining court, § 16 was intended to embrace a. case of felony in which he had already had such benefit, but was not in custody -at the time of finding the indictment, as he might not be by reason of his escape, or if bailed, by his failure to appear in discharge of his recognizance.
The 16th section, as it stands in the present law, ■then proceeds: “Upon such presentment or indictment, and upon any like presentment or indictment made or found, or information filed in such county or .corporation court, process shall be awarded by the court, or be issued by the clerk thereof in vacation.” - The word “such,” last used, refers to the “county or •corporation in which the offence is charged to have been committed,” as mentioned just above. And the words “upon any like presentment or indictment made ■or found,” embraces cases, of felony as well as misdemeanor; as plainly appears from what follows, which .is, “ Such process, if the prosecution be for a felony, shall be a capias; if it be for a misdemeanor, for which an infamous or corporal punishment may be in *758 flicted, it may be a capias or a summons, at the discretion of the court; in all other cases it shall be, in the first instance, a summons; but if a summons be returned executed, or two be returned ‘not found/ and the defendant do not appear, the court may award a capias .” This last clause, in regard to process, formed fhe subject of a separate section in the act of 1847-8, while it is embodied in the 16th section of the act of 1866-7; but its is the same in both.
My construction of the 15th and 16th sections then is, that the 15th is confined to cases where the charge-of felony is made in a court not having jurisdiction to-try the offence, whether such court be a Circuit, County or Corporation court; while the 16th section applies-to cases where the charge, whether it be for felony or misdemeanor, is before a court having jurisdiction to try the offence, that is, “ the court of the county or corporation in which the offence is charged to have-been committedincluding in the latter cases a presentment or indictment for a misdemeanor, certified to such court by the clerk of a Circuit court, as required by the section. In the former case, a capias to answer the charge is not the proper process for the arrest of the accused, because he cannot answer it in a court not having jurisdiction to try it, and therefore a warrant: is directed to be issued to arrest him, “ and carry him before a justice of the county or corporation in which he ought to be tried/’ who is to “ proceed in the case-as if the warrant bad been issued by himself.” In the-latter case, that is, in regard to the 16th section, there being a proper charge before a court of competent-jurisdiction to try it, nothing remains to be done in order to its trial, but to compel the accused, by proper-process, to answer the charge. Accordingly, the section directs such process to be thereupon awarded or-issued, and prescribes what the process shall be, de *759 daring that it shall he a capias, if the prosecution he for a felony.
If it be asked, why did not the Legislature direct the presentment, &c., mentioned in the 15th section to be certified to the court of the county or corporation in which the offence is charged to have been committed, as is done by the 16th section in regard to a misdemeanor, instead of directing a warrant to be issued?. The answer is, that it would produce delay in the arrest of the accused to send the charge to another court, in order that process might be awarded therein, instead of issuing a- warrant immediately against him; and, hearing of the charge, as he no doubt soon would, he would be apt to make his escape before he could be arrested. Other reasons might be suggested, but it is unnecessary.
Again, it may be said that a person might be arrested under a capias in a distant county from that in which he would have to be tried, and be carried to the latter county, and there committed to jail; whereas, by being carried under a warrant before a justice, he might be able to show that he was not guilty of the of-fence, and obtain his discharge, or might, be admitted to bail. The answer is, that this possible inconvenience is obviated in a great degree, if not entirely, by the right which he has to obtain relief by habeas corpus, and by a speedy trial of the case, which the law secures to him.
But whatever arguments, ab ineonvenienti or otherwise, may be made against the construction for which I contend, I think they are greatly outweighed by the reasons which exist in support of that construction. I cannot bring my mind to the belief that the Legislature, in abolishing the examining courts, intended at the same time to make .an examination by a justice of the peace, indispensably necessary before there can be a trial for felony, even though the charge be made by *760 indictment found by a grand jury of the county or corporation in which the offence is charged to have been committed, and in a court of competent jurisdiction to try the offence- If the Legislature had so intended, they would not have left so very important a matter to be vaguely inferred from language which, I think, admits, much more plausibly and reasonably, of a different construction; but would have expressly declared such intention, as they did in the former law in regard to examining courts. The law in regard to those courts, as it stood in the Code when the act of 1866-7 was passed, declared that, “ before a white person, charged with a felony-, is tried before a Circuit court, he shall be examined as hereinafter provided, unless, by his assent, entered of record in such court, such examination be dispensed with.” Code of 1860, ch. 205, § 1, p. 827. And it further declared, that “ if the court, in which a person is examined as aforesaid, discharge him, he shall not thereafter be questioned or tried for the same offence.” Id. § 11, p. 828. Thus, in substance, the law had been for a great many years. Is it credible that the Legislature of 1866-7, with the Code of criminal procedure, containing these two important provisions, before their eyes, and engaged in the work of revising and amending it, would have repealed the whole chapter containing these provisions, without expressly declaring, if they had so intended, that, before a person charged with a felony is tried therefor, he shall be examined before a justice of the peace, &c? Hot only would they have so declared, but they would also, no doubt, have further declared what should be the effect of a discharge by such justice, and whether it should be, as was the case in regard to an examining court, that the accused should “ not thereafter be questioned or tried for the same offence.” Instead of so expressly declaring their intention, if it existed, they have left us to infer it, *761 with great difficulty, in regard to the necessity of an examination before a justice; and they have left us in total darkness, as to what would be the effect of a discharge by such justice; and whether or not it would be necessary, in case the accused was committed or recognized for trial, to have a new indictment found by the grand jury, even though one may already have been found against him in the court which has to try the offence.
The construction for which I contend, is expressly 'maintained by the decision of the late “ Military Court of Appeals,” in the case of Shelly v. The Commonwealth, 19 Gratt. 652; and I entirely concur in the opinion of the court in that case. It is also strongly maintained by the decisions in Clore’s case, 8 Gratt. 606; and Wormeley’s case, 10 Ib. 658. In Clore’s case, there was a motion to quash, and a plea in abatement, on the ground of alleged irregularities in the proceedings before the justice who committed the accused for ■examination by the County court, without any previous enquiry or examination into the truth of the offence by the justice himself. On this subject, Judge Lomax, in delivering the opinion of the court, said : “ Ao precedent has been referred to for sustaining either a plea in abatement, or a motion to quash, upon the ground -of such irregularities in the initiatory proceedings of the justice, which are designed merely to ascertain that there is a degree of suspicion against the accused, requiring that he should be held in custody until a more 'Solemn examination can be had as to the probabilities ■of the charge, and a trial had of his guilt or innocence. Whatever inconveniences he may complain of, as to ■the examination or want of examination before the .justice, they can have no relevancy as objections to the indictment, which has given the sanction of the grand inquest of the county to the charge for which the justice committed him. At that of the *762 after the finding of the grand jury upon the examinations and proofs before them, charging him with the murder, what defence, in reason or in law, can or ought to be to the prisoner, that the justice who committed him for the crime, did not, in his prior examination, examine the case according to legal rules of evidence ?” The court then refers to the case of the Commonwealth v. Murray, 2 Va. Cases, 504, as giving a decisive answer to the question, and thus proceeds: “ The principle of that decision is not at all varied, because of any subsequent amendments of the law in ch. 204, Code of 1849, relating to arrest, commitment and bail.” These views are fully sustained by this court in Wormeley’s case, cited supra. See the opinion of the court, delivered by Judge Daniel, pp. 666-670. These-cases clearly show, that a preliminary examination by a justice was never regarded in Virginia as a necessity in a criminal case, further than as a means of summoning or authorizing a court of examination in a case of felony; and that the act of 1847-8 produced no change of the law in that respect. The act. of 1866-7 has-given no greater effect to the examination by a justice than it formerly had. And, as it owed its necessity at any time only to the existence of examining courts, it seems to follow, as a matter of course, that such necessity, if it can be so called, ceased to exist when the examining courts ceased to exist.
I owe an explanation for having said so much upon this question. I have done so, because, 1st, the question is a most important one; 2dly, it was argued at very great length by the learned counsel of the plaintiff in error, who much relied on the assignment of error on which it arises; and, 3dly, there is a diversity of opinion upon it among the judges of this court, now in session.
Since writing the foregoing opinion, I have heard read, in conference, the opinion about to be delivered. *763 by my brother Staples; which, though certainly able and ingenious, has yet produced no change of the views I have presented. But I have already said so much on the subject, that I would be inexcusable in prolonging this opinion to much, if any extent, for the purpose of further enforcing the views I have already presented, or of presenting other views suggested by his opinion. I will venture, however, to say this much at least, that his construction requires us to strike out of the 16th section the important words: Such process, “ if the prosecution be for a felony;” not because they are unmeaning, and mere surplusage, but because they are in direct conflict with what goes before in the same section, according to his construction of it? That construction also requires us to confine the words “ presentment” and “indictment,” wherever they occur'in the previous part of the section, to a case of misdemeanor, although “ misdemeanor ” is not once mentioned in that part of the section, and although the word “indictment” at least, if not “presentment” also, applies as well, in its ordinary and proper signification, to felony as to misdemeanor. But a more serious, and to me an insuperable obstacle in the way of that construction is, that it requires us to believe that the Legislature, while abolishing examining courts, intended to make an examination by a single justice, a matter of necessity, before a person can be tried for a, felony, though indicted therefor in solemn form by a grand jury of the county in which the offence is charged to have been committed; and that the Legislature conveyed so important an intention, not in express and apt language, which was plainly called for,, but by leaving it to be inferred from equivocal words, which may have no such meaning. On the other-hand, my construction leaves the 16th section unchanged and in full force, according to its literal, and, as I think, true meaning, except that the word “ like/* *764 where it occurs has, I think, no material meaning; an(l it is only necessary to supply the words, “in a court not having jurisdiction to try it,” after the word “ felony»” in the second line of the 15th section (which words, indeed, seem to he implied by the rest of the section), to express plainly the meaning of the Legislature, in my view of it. And then I get rid of the insuperable difficulty before referred to. But, whether it was intended to confine the 15th section to courts not having jurisdiction of the offence, or to extend it also to courts having such jurisdiction; still, I think, it was not intended thereby to give a person accused of felony a right to be examined by a justice before he can he tried for the offence; hut its only object was, to insure the arrest of the accused, in order that he may he tried for the offence: It is directory, not mandatory. Upon a presentment, indictment or information of a felony, some legal means must at once be used to have the accused arrested, in order that he may he tried for the offence. The best means, according to the circumstances of each particular case, which the law affords for that purpose, ought to be used by the court. If the court in which the presentment, &c., is made, has no jurisdiction to try the offence, then the best means would generally be a warrant, as directed by the 15th section. But, if an indictment for a felony is found in .a court having jurisdiction to try the offence, then generally, if not always the best means, would he a ■capias, which is the proper process to compel an answer to an indictment of felony, as well by the common law as by the statute, which, in fhis respect, is only declaratory of the common law.
I am of opinion that the Hustings court did not err in refusing to remand the accused for examination before a justice of the peace, when he was arraigned to .answer the indictment found against him.
*765 Staples, J.
No one entertains a tiger respect than myself for the opinions of the president of this court, His enlarged and varied experience as a judge, and as one of the revisors of the Code of 1849, and his thorough knowledge of the Virginia statutes, entitle his views, touching the construction of these statutes, to peculiar consideration and respect. It is, therefore, with real regret, and no little distrust, that I venture to express my dissent from the opinion he has delivered.
I think it was the duty of the judge of the Hustings court, after indictment found, to issue a warrant against the accused, under which he ought to have heen arrested and taken before a justice, with a view to the preliminary examination prescribed by the statute; and that the accused could not, against his consent, be put upon his trial without such preliminary examination.
I propose to state at length the reasons which have conducted me to this conclusion. The 15th section of chap. 207, Acts of 1866-67, provides that “upon a presentment, indictment or information of a felony, for which the party charged has not been arrested, the presiding judge or justice shall issue a warrant to any sheriff, sergeant or constable, commanding him to arrest such party and carry him before a justice of the county or corporation in which he ought to be tried; and to summon the witnesses on whose information the presentment, indictment or information was made, to appear and testify before the justice. The justice to whom such warrant is returnable shall proceed in the case as if the warrant had been issued by himself.”
The 16th section provides: “When a presentment is made, or indictment found, in a ease other than that provided for in the preceding section, if it be in a Circuit court, a copy of such presentment or indictment, and of all papers relating to the case, shall be certified by *766 the clerk to the court of the county or corporation in which the offence is charged to have been committed. Upon such presentment or indictment, and upon any Presentment, indictment or information, filed in such County or Corporation court, process shall be awarded by the court, or be issued by the clerk thereof in vacation. Such process, if the prosecution be for a felony, shall be a capias. If it be for a misdemeanor for which an infamous or corporal punishment may be inflicted, it may be a capias or a summons, at the discretion of the court; in all other cases it shall be in the first instance a summons.”
The action of the court below, in awarding the capias, and in refusing to send the accused to a justice for examination, was doubtless based upon the provisions of the 16th section. That there is an apparent conflict between the two sections is universally conceded. The 15th section is positive, in terms requiring the presiding judge or justice, upon presentment made or indictment found of a felony, for which the accused has not been arrested, to issue his warrant for the apprehension of the accused. The 16th seems to be equally positive that the process in a prosecution for a felony shall be a capias. How are these conflicting provisions to be reconciled, one with the other? When an indictment is found, what is to be done by the presiding judge? Is he to issue a warrant or capias ? Shall the accused be arrested and put upon his trial, or taken before a justice for examination?
It is well settled that when a doubt arises upon the construction of a statute, all acts on the same subject matter are to be taken together and examined, in order to arrive at the legislative intent. In The Earl of Ailesberry v. Patterson, Douglas R. 20, Lord Mansfield said, “Where there are different statutes, in parimateria, though made at different times, or even expired and not referring to each other, they shall be taken and *767 construed together as one ‘system, and as explanatory of each other.” And in Bassey v. Storey, 4 Barn. & Ad. 98-108, Parke, J., said, “The provisions of a repealed act of Parliament were important as aiding in the construction of the enactments of existing statutes.” An examination of the earlier legislation of the State, regulating criminal proceedings, will tend to remove some of the difficulties in the way of construing and harmonizing the^ sections cited, in order to give effect to each.
In the year 1792, jurisdiction in cases of treason and felony was conferred upon the District court. Previous to that time it was vested exclusively in the G-eneral court. "When a free person was charged before a justice with treason or other felony, a warrant was issued for his arrest; if, in the opinion of the justice, the charge deserved investigation, the accused was committed to jail to await an examination before the County court. If, upon such examination, the justices of said court thought the evidence sufficient to convict the prisoner of treason or felony, they remanded him to the jail of the county, and thence he was removed by mittimus to the public jail, or he was bailed for his appearance before the District court having jurisdiction ; where he was tried upon indictment found by a grand jury empanelled in that court. If the accused was already in custody at the time of finding the indictment, no other process was necessary, and he was immediately arraigned and tried. If he was on hail and did not appear, or if, being in custody, he escaped and did not appear in answer to the indictment, some process was necessary to enforce his appearance. It was therefore provided, by the various enactments of 1786 and 1792—after any person shall he indicted of treason or felony or other crime, to which by law an infamous punishment is affixed, if he or she be not already in custody, the sheriff shall be commanded to attach his or her body by written precept, which is *768 called a capias; with provision, if the accused should not be found, for other process against the body and goods.
This, however, was not the only mode of instituting-prosecutions for felony. They could be, and indeed were often, commenced by indictment in the District court under which a capias was issued, the accused arrested and tried on the indictment. In such case there-was no statute requiring a warrant to be issued, or a preliminary examination before a justice. It was so held by the General court in Commonwealth v. Blakely, 1 Va. Cas. 129, upon a plea in abatement, that the defendant had not been examined by the justices of the county court, as required by the act of 1786.
This decision probably led to the act of 1804, which provided that before any person should be tried in a. District court for a felony, he should be tried by an examining court After this act the course of proceeding was materially changed. Whether the prosecution was commenced by warrant emanating from a justice, or by presentment or indictment, the accused was nevertheless entitled to the examining court. If" an indictment or presentment was the foundation of' the prosecution, it was the invariable rule to issue a-, warrant for the apprehension of the accused, under which, if arrested, he was taken before a justice of the peace. In such case, however, the justice had no authority to enquire into the offence; his duty was-purely ministerial, to summon the examining court, which enquired into the fact, and discharged the accused from further prosecution, or remanded him for trial before the Circuit court. Thus stood the law until the revisal of 1847 and ’8, when important changes were made in the mode of procedure. Under that law, when complaint was made before a justice, of the commission of an offence, it was his duty to issue a warrant for the arrest of the offender. The arrest *769 being made, the justice examined the complainant, the witnesses for the prosecution and for the accused, who had the right to be assisted by counsel. If it appeared, upon the whole examination, that no offence had been committed, or there was not probable cause for charging the accused with the offence, he was discharged. If, on the other hand, it appeared that a felony had been- committed, and there was probable cause to believe the accused guilty, he was committed or bailed for examination before the next County court.
The 16th section, chapter 20, of the same act, provided that “when a presentment shall be made by a grand jury of any felony for which the party charged shall not have been arrested, it shall be the duty of the court to issue a warrant commanding the proper officer to arrest the accused and take him before a justice, and to summon the necessary witnesses to appear before such justice; and the latter was directed thereupon to proceed with the ease in the same manner as if the arrest had been made by virtue of a warrant originally issued by him.”
The 17th section provided, that upon any presentment being found or information filed, if the accused be not already in custody, the court shall order the clerk to issue the proper process against such party, to answer such presentment or information on the first day of the next term, or at such other time as may be prescribed by law or directed by the court.
The 18th section provided, that “if the prosecution be for a felony the process to answer shall be a capias. If the prosecution be for a misdemeanor, to which an infamous or corporal punishment is annexed, the process may be a capias or a summons. In all other cases the process shall, in the first instance, be a summons. These ■ sections are substantially reenactments of provisions contained in the Code of 1819, with the single *770 exception of that relating to the examination before a justice of the peace upon presentment made.”
It is obvious the 16th section applied to presentment °f felonies; the 17th section to misdemeanors; and the 18th was intended to be a general provision, applicable alike to misdemeanors and to felonies; and in cases of felony prescribing the process to be issued where the accused, having had his examination before the County court, did not make his appearance to answer the indictment subsequently found against him. The language is, “if the prosecution be for a felony, the process to answer shall be a capias.
It will be observed there is an apparent conflict between the 16th and 17th sections, which is alluded to in. the report of the revisors of 1849. They suggested an amendment of the 17th section, so that it would read: “ "When a presentment is made or information filed in a case, other than a case of felony, the court shall award process. The Legislature did not adopt the precise phraseology suggested by the revisors; but the amendment made had substantially the same effect. The 17th section, as amended by the Legislature, reads: “When a presentment is made or information filed in a case other than that provided for in the preceding section.” I repeat, the effect of this amendment was substantially the same as that indicated by the revisors.
That section (17th, 1847 and 58) could not, by any reasonable intendment, be construed to embrace felonies. In the preceding section it was plainly declared that upon a presentment of a felony for which the accused has not been already arrested, the court shall issue a warrant, under which the party charged, being arrested, shall be taken before a justice for examinartion.
■ The Legislature could not mean to say, in the very next section, that upon the presentment of a felony, a *771 warrant shall not issue, and the accused shall not he taken before a justice; hut that a capias shall be awarded by the clerk, the accused arrested and brought before the court to answer such presentment. In case of a presentment of a felony, suppose a capias issued; the ■accused is arrested and brought before the court; I beg to ask, what could be done with the prisoner: put him upon his trial? In the first place, no man could ever be tried in Virginia for a felony upon a' presentment. An indictment was always indispensable. In the next place, as the law stood when these provisions were in force, the accused could not be tried by a jury ■upon a charge of felony until he had been examined before the County court.
It is clear, then, the court could not try the accused under such circumstances, and nothing could have been done with him, except to send him to a justice of the peace, for the preliminary examination prescribed by the 16th section of that statute. For such an object the capias was wholly unnecessary and irregular. It is a process emanating from a court to bring the accused before it, to answer the accusation, to plead and be tried; and as such is utterly inapplicable to a presentment of a felony.
The error of so construing the 17th section as to embrace cases of felony, is the more apparent when it is considered that the Circuit courts met but twice a year; that a capias issued at one term would not be returnable or acted on until the next; that, in the meantime, the accused would be committed to prison and kept in close confinement; and, after the lapse of six months, would be sent to a justice to have the examination he would have had if the judge had issued a warrant in the first instance.
It is said, however, the 17th section was intended to apply to cases of felony in which the accused had been arrested, had his examination before the County court, *772 liad been admitted to hail, or committed to prison and made his escape, and was not then in custody. My answer is, in such case, an indictment would he found and not a presentment, and the process to answer would be a capias, under the 18th section.
Where the accused has had the examining court, the presentment would he worse than useless; it would be an absurdity; as no steps could be taken under it whatever. The accused, having had his examination, might be put 0)i his trial, but not upon a presentment. The Commonwealth, after the useless and unnecessary delay of such a proceeding, would be compelled to abandon it, and resort at last to an indictment. By considering the 16 th section as applicable to felonies, the 17th to misdemeanors, and the 18th a general provision, prescribing the mode of procedure -where the prosecution had been so far proceeded in that process to bring the accused in to answer was necessary, all the difficulties in the way of construing these sections are removed.
This construction is so obviously in accordance with previous enactments, and the spirit and reason of this entire system of legislation in regard to criminal proceedings, I must confess my surprise it should be seriously contended the 16th section embraced any other than cases of felony.
Thus stood the law until the revisal of 1847-48, with these three sections separate and distinct; when the Legislature, in the Code of 1849, unfortunately united and blended the 17th and 18th sections into one; and this mistake was repeated in the Bevised Code of 1860, and in the acts of 1866 and 7.
These two sections, thus blended, constitute the 16th section in the Code of 1860, and also in the Acts of 1866-67, chap. 207. All the difficulties arising in construing these provisions in the last mentioned acts, may be removed by applying the 15th section to *773 felonies, the 16th to misdemeanors, and by considering the provision therein contained, relating to process, as the subject of a separate and distinct section, as in the act of 1792, the Revised Code of 1819, and the acts of 1847 and 8.
Indeed, I understand it is conceded, that so much of section 16, as directs that a copy of the presentment or indictment, if found in the Circuit court, shall be certified to the County court, does refer, exclusively, to presentments or indictments of misdemeanors, and not of felonies. But it is insisted that the next clause in the. same section applies both to felonies and misdemeanors. That clause reads: “Upon such presentment or indictment (that is, an indictment or presentment certified from the Circuit court), and upon any like presentment made or indictment found, or information filed in such County or Corporation court, process shall be awarded by the court, or be issued by the clerk thereof in vacation.”
How, if the Legislature intended, by the words, “ such presentment or indictment,” to embrace misdemeanors alone, as is admitted; and, by the words immediately succeeding, “ upon any like presentment or indictment,” to embrace both felonies and misdemeanors, I submit, with all possible deference, they have used extraordinary language to effect the object in view. The effect of this construction is, that not only the judge in term, but the clerk in vacation, will be authorized, if not absolutely required, upon a mere presentment or information of a felony, to issue a capias for the apprehension of the accused.
It is said that presentment is a generic term, and is sufficiently comprehensive to include an indictment, and the clause in question must be construed as directing the process appropriate to each finding. Under our statutes these terms have never been indiscriminately employed; but have been always kept separate *774 and distinct, each having its appropriate meaning and:. function. If the particular clause in question refers. to felonies, it is difficult to understand what process. other than a capias the court or clerk could issue upion. a presentment of felony. It cannot refer to a warrant,, as that is fully provided for in the preceding section.
It seems to me the true meaning of the section is-this: When a presentment is made or indictment, found of a misdemeanor in a Circuit court, it is to he certified to the County court, and that court is required to award the proper process. And upon any like presentment or indictment or information (that is,, for a misdemeanor), filed in the County court, the-same course is to he pursued. As by the 15th section the mode of procedure is prescribed upon presentments or indictments of felony; so, by the 16th section, the mode of procedure is directed in cases of misdemeanor.
It has been argued that the 15th section applies to-cases in which the presentment or indictment of a felony is made or found in a court having no jurisdiction to try the offence. That it does apply to such cases is very clear; hut it is sufficiently comprehensive to embrace every case of a presentment or indictment where the accused has not been already arrested. Such has been the construction given to it for forty-years; and I think the Legislature, merely by the insertion of the word “indictment” in that section, could not have intended to change the whole course of criminal proceding in this State.
If a presentment or information of a felony is made, or filed in a County or Corporation court having complete jurisdiction, from what source, except the provisions of the 15th section, will the court derive its authority to issue a warrant, or the officer to arrest the-accused and take him before'the justice? It seems tome to be impossible, without-'the greatest confusion *775 and embarrassment, to confine that section to presentments and indictments made or found in a court wbicb bas no jurisdiction to try tbe case; but it must be con strued to embrace every case of a prosecution for a felony where tbe accused bas not been already arrested. My construction, then, of these sections is, that in all cases of an indictment or presentment of a felony, for wbicb tbe party charged bas not been arrested, it is tbe duty of tbe court to issue a warrant directed to tbe proper officer, commanding him to arrest tbe accused and take him before a justice, to be examined, as prescribed by tbe statute. If the accused has been already arrested under such warrant, or that of a justice, bas bad bis examination before a justice, and been thereupon bailed, or committed and escaped from prison, or from any other cause does not appear, tbe proper process against him is a capias.
It is said these views are in conflict with tbe 2d section, chap. 208, act of 1866-’67. That section provides that when an indictment or other accusation is filed against a person for a felony in a court wherein be may be tried, tbe accused, if in custody, or if be appear according to bis recognizance, shall be arraigned and tried at tbe same term. Tbe answer is simple and obvious. Tbe accused, if in custody or on bail at tbe time of finding tbe indictment, must have been arrested under tbe warrant of a justice, upon complaint to him, or tbe warrant of a judge upon a presentment or indictment under tbe 15th section; and thereupon bad bis preliminary examination and trial before a justice. If we suppose tbe plain provisions of tbe law complied with, there is no other mode by wbicb a party charged with a felony can be arrested and held in custody or released on bail.
This is no new enactment. Tbe very same provision, substantially, is found in tbe Code of 1819; and in tbe Code of 1860, tbe phraseology is precisely tbe same. *776 with that under consideration. If the construction now sought to be given to that section he the proper one, its effect under previous laws would necessarily have been to deprive the accused of the benefit of the examining court when the prosecution was commenced by indictment. But the General court, in Hurd v. Commonwealth, 5 Leigh 715, decided that although the prosecution be commenced by indictment, the accused was still entitled to the examining court; and there must he a new indictment after such examination, before the accused could be put upon his trial for the offence.
It has been argued, that if the Legislature intended that the accused, in all cases of felony, should have the examination before a justice, it would have so provided; as was the ease in regard to the examining courts. Under our present statutes no such provision is necessary to secure to the accused the benefit of such examination, in as much as there are hut two modes of instituting prosecutions for felonies in Virginia: in the one by warrant emanating from a justice, and in the other by indictment, presentment or information, and a warrant thereupon issued by a judge. Therefore, as in either case, the accused is entitled to the preliminary examination, the Legislature has as clearly expressed its pleasure that the accused shall have this examination as though it had so declared in express terms.
These views are not in conflict with Clore’s case, 8 Gratt. 606, or Wormeley’s case, 10 Gratt. 658. When these cases were decided there was no law in force in this State requiring a judge or presiding justice, after indictment, to issue a warrant for the apprehension of the accused, under which, if arrested, he was to he taken before a justice for examination. That provision was first incorporated into our statutes by the acts of 1866 and 1867.
The examination before the County court, to which *777 the accused was entitled before that time, gave the accused all the information, every advantage, he could in any manner derive from the examination before single justice. And I understand the court, in the two cases cited, merely as saying, that after such examination before the County court, the accused could not, in any way, be prejudiced by irregularities occurring In the course of his examination before a justice of the peace or coroner. The case of Shelly v. Commonwealth, 19 Gratt. 653, has been cited and relied on. "Whether that decision be sound law or not, whether made by a tribunal whose opinions are binding authority or not, it is unnecessary now to consider; it is sufficient to say that decision was based expressly upon the ground that at the time the indictment was found the accused had been already arrested, and was then in the custody of the court; and therefore the 15th section of the act did not apply to his case. In Kemp’s case, 18 Gratt. 969, the court merely held that an indictment for a felony will not be quashed because the •clerk of the examining court failed to insert the warrant of commitment in the record; and after indictment found, the only question open upon the previous proceedings is, whether the accused has been examined for the offence before the County court. In this case there is no objection for irregularities occurring before indictment. The question for our consideration is, what are the rights of the accused after indictment found.
The statute declares, that the judge shall issue his warrant for the apprehension of the accused, and the latter shall thereupon be taken before some justice. Has not the accused a right to insist upon a strict compliance with every provision of the statute applying to his case? Upon what principle is it the court may disregard the plain letter of a law obviously intended for the benefit of the party charged with a criminal of- *778 fence? If we may thus judicially repeal one importaut section, there is no limitation of the power of the courts. The most important and sacred rights of the accused may he destroyed by this species of judicial legislation. Even in civil cases an error in the process is fatal if the objection is made at the proper stage of the proceedings. If the defendant is sued in debt when the process should be assumpsit, the action will fail.
If the property of the citizen is taken for the dues of the goverment, every step in the proceedings of the officer must be in strict compliance with the mandates of the law. And yet in a case involving life or liberty, the court is permitted to disregard one plain section of a statute because another section is involved in doubt and obseuriiy.
"Whatever the 16th section may mean, by its very terms it does not and cannot apply to cases provided for in the 15th section. That is clear. And if the accused is within the terms of the 15th section, if he has been indicted of a felony and has not been arrested, he has no concern with the 16th, and the 16th has no concern with him.
It is said, however, that these provisions relied upon are merely directory, and a failure to comply with them will not vitiate the proceedings. It is a novel doctrine, to ipe, at least, that statutes affecting the liberty of the citizen, and intended for .his benefit, may be disregarded by the courts upon the notion they are merely directory. It is said by an eminent writer, that this mode of getting rid of a statutory provision is not only unsatisfactory, but it is the exercise of a dispensing power by the courts, which approaches so near legislative discretion that it ought to be resorted to with reluctance, and only in extraordinary cases, where great public mischief will ensue, or important private interests demand the application of the rule. A wholo *779 statute may be thus disposed of when in tbe way of tbe caprice or will of the judge. And in Mayhew v. Davis, 4 McLean R. 213, tbe doctrine is thus expressed: It may be safely affirmed that a statute' can never be deemed directory where tbe act or tbe omission of tbe act can, by any possibility, work advantage or injuiy, however slight, to any one affected by it.
If this statute be merely directory, to be disregarded at tbe pleasure of tbe court, or if tbe construction now sought to be given to it be erroneous, we have this partial and incongruous system of criminal proceeding in Virginia. Should it be tbe good fortune of tbe party charged with a crime to be arrested under tbe warrant of a justice, be is entitled to an immediate examination; be is assisted by counsel; bis witnesses are beard; be is confronted with bis accusers; be is informed of tbe nature and details of tbe accusation; and be is often able to make a successful defence against a false and frivolous charge, or a malignant and dangerous one. If, on tbe other band, be is sent on for trial, be may be successful in obtaining bail; be is fully informed of tbe nature of tbe offence with which be is charged, and tbe character, position and temper of tbe witnesses by whom be is impeached; and, when placed on bis trial, no accusation is to be met, concocted in tbe recesses of tbe grand jury room, of tbe nature of which be can know nothing beyond tbe technical averments of an indictment, or the voice of rumor, reaching him through tbe bars of bis prison. Tbe same results would follow, tbe same advantages accrue, to tbe accused, should tbe prosecution be commenced by presentment or information.
But, should tbe prosecuting attorney, as a matter of fancy, whim or prejudice, conclude to send to tbe grand jury an indictment, tbe whole course of proceeding is changed. Tbe accused is arrested under a capias; be is deprived-of tbe preliminary examination; *780 lie can make no application for bail; he is committed to jail; and finally put on his trial, without accurate knowledge of the nature of the accusation, the eharacter of the prosecutor and witnesses, whose breath is to sweep away his liberty, if not his life. And this is the system of criminal procedure it is supposed the Legislature intended to establish in Virginia, and this the power it has placed in the hands of the prosecuting ah torneys throughout the State. There has not been a day in sixty-six years, in Virginia, that a citizen has not been entitled to this examination', in some form, either before a single justice or an examining court.
The accused may waive the examination; but, unless he does so, the law says he shall have it; and the courts cannot refuse it. So long as the examining court was in existence, this preliminary examination before a justice was of little importance or value to the accused; but, now that one is taken away, there is greater reason for preserving the other. The very constitution of a grand jury often leads to frivolous, vexatious and malignant prosecutions; by which the peaceful and unoffending citizen is dragged from his home to a distant court, confined in prison, and only released after the loss of health and reputation, and the utter ruin of his pecuniary affairs. Fortunately, this has not often happened in the State of Virginia, as it could not well occur under a system of criminal jurisprudence so beneficent and humane as that which has heretofore guided the action of our courts. But, in other courts and other States, grand juries have been made the instruments of private vengeance and political persecution, and a wise and prudent foresight will provide against the contingency of such occurrence here in the future. Judge King, of Pennsylvania, in the year 1845, in an able and luminous discussion of this very topic, uses the following language: “ A warrant of arrest, founded on probable cause, *781 supported by oatb or affirmation, is first issued against the accused by some magistrate having competent jurisdiction. On his arrest, he hears the nature and cause of the accusation against him; listens to the testimony of the witnesses face to face; has a right to cross-examine them, and may resort to the aid of counsel to assist him. It is not until the primary magistrate is satisfied, by proof, that there is probable cause that the accused has committed some offence known to the law, that he is further called to respond to the accusation. He is then either bailed or committed to answer before the appropriate tribunal to whom the initiatory proceedings are returned for further action. By the opportunity thus given to the accused of hearing and examining the prosecutor and his witnesses, he ascertains the time, place and circumstances of the crime charged against him, and thus is enabled, if he is an innocent man, to prepare his defence; a thing of the hardest practicability if a preliminary hearing is not afforded him. It is not true that a bill of indictment, found without a preliminary hearing, furnishes him with the proper information. It practically neither describes the time, place nor circumstances of the of-fence charged. Hence the inestimable value of a preliminary public investigation, by which the accused can be truly informed, before he comes to trial, what is the offence he is called upon to respond to. It is by this system that criminal proceedings are ordinarily originated. Were it otherwise, and a system introduced in its place by which the first intimation to an accused of the pendency of proceedings against him, involving life or liberty, should be given, when arraigned for trial under an indictment, the keen sense of equal justice, and the innate detestation of official oppression which characterize the American people, would make it of brief existence.”
It may be, the Legislature, having abolished the ex *782 amining court as a useless incumbrance, but influenced by considerations of tbe character mentioned, adopted provision allowing the accused the benefit of a Preliminary examination in all cases of felony. "Whatever may have been the motive, or whatever may be the consequences, the courts must declare the law as it is written. If I am wrong, the Legislature, now in session, can correct the error. At any rate, it is an error in favor of life and liberty; an error which tends to throw around the accused those safeguards prized by all people jealous of power and tenacious of human rights; which may be of little importance to the strong and powerful, but to the weak and defenceless is of inestimable value.
The history of the last few years, and the circumstances by which we are surrounded, admonish all of us, that it is only by a strict adherence to all the forms and requirements of law that the peace and tranquility of society are preserved, and the liberty of the citizen made secure.
Anderson, J.
There seems to be some obscurity and defect in the law, since the repeal of the act requiring an examining court. I can see nothing in the action of the Legislature, however, which indicates a purpose to substitute an examination before a justice of the peace for that of the examining court. Whilst the law requiring an examination before the County court has been totally repealed, that providing for a preliminary examination before a single justice, or committing magistrate, is left precisely as it was. And what are the rights of the accused, under that provision which remains unchanged, has been judicially settled by repeated decisions of the General court and of this court.
In Blakely’s case, 1 Va. Cas. 129, the prisoner was indicted in the District court of Staunton for a felony. *783 The court awarded a capias against him, which was executed; and he was brought into court the next day and pleaded not guilty. The trial was postponed to the seventh day of the court. On the day to which the cause was continued the defendant appeared, and was allowed to withdraw his former plea, and to put in a plea that, by the laws and usages of the Commonwealth, he was entitled to an enquiry before a court of examination, before he can be indicted and arraigned before the District court. The question was adjourned to the General court, consisting of Tucker, Tyler, Kelson, White and Carrington, who unanimously held that the new plea pleaded by the accused should “ be over-puled by the District court, and that the said court ■ought to proceed in the trial of the defendant upon the presentment and indictment.” This decision was made before the law providing for examining courts was amended by the act of January 24th, 1804, which gave the accused the right to be examined, in the manner prescribed by law, by the court of the county or corporation, before he could be tried upon a charge of felony or treason before the District'court. And this provision was retained in the criminal code of the State •until the examining court was abolished by the act of April 27th, 1867, repealing chap. 205 of the Code. When Blakely’s case was decided, the law providing for an examining court was in force substantially as it has been since, until the repeal in 1867, except that there was no provision expressly entitling the accused to an examining court, before he could be arraigned and tried upon an indictment in the District court.
If it was not error to arraign and try the accused, upon an indictment before the District court, prior to the act of 1804, before he was tried by an examining •court, a fortiori, it would not be error to try him now •upon an indictment, before he had an examination by a single justice,- there being no such provision in the *784 law of arrest and commitment (and never has been) as that which was first engrafted in the act in relation to examining courts in 1804. If, before that act, it was competent for the District court to arraign and try upon an indictment, it would now be competent for the Circuit court to arraign and try upon an indictment before a preliminary examination by a single justice.
But, as I have said, we are not without judicial construction of the law of arrest and commitment, as it, affects this question. In Clore’s case, 8 Gratt. 606, the prisoner offered two pleas in abatement. In the first plea he alleged that he was committed by a justice of the peace, without any inquiry or examination into the truth of the charge for which he was committed. In the second he alleged that the offence wherewith he stood charged was never examined into by a justice of the peace in his presence. The court rejected both pleas, and its judgment was affirmed by the General court. Judge Lomax, in delivering the opinion of the court, says: “Whatever inconveniences he may complain of, as to the examination or want of examination, before the justice, they can have no relevancy as objections to the indictment, which has given the sanction of the grand inquest of the county to the charge for which the justice committed him. In Wormeley’s case, 10 Gratt. 658, 670, Judge Daniel, in delivering the opinion of the court, cites this case with approval, and says: “It was decided in Clore’s case that the principles of the decisions just above mentioned, is not at all varied because of the subsequent amendments of the law in the Code, relating to arrest and commitment; that after the finding of the grand jury, upon the examination and proofs before them, charging the accused with the murder, it was rio defence in reason or in law to the prisoner, that there had been irregularities in his commitment.” In Kemp’s case, 18 Gratt. 969, J. Joynes reviews the cases on this subject, and concludes *785 in these words: “If the prisoners conld not, on a motion to quash, he allowed to show that the original commitment was by an illegal warrant, or without investigation, or by a person without authority, they cannot be allowed to show that the commitment was not duly certified to the clerk, however essential that may be to the regularity or legality of the commitment. The essential thing into which alone, of all the proceedings before indictment, the court inquires, is, whether the prisoners were duly examined and committed by the examining court for the same offence for which they were indicted.” And this, as we have seen, the court could only inquire into by virtue of the provision made in the act of 1804, and retained in the law of examining 'courts until the whole was struck down by the act of 1867. Since this repealing law went into operation it would be no defence to an indictment, that the accused had not been examined by an examining court. And we have seen that it never has been a ground of defence, that he had not been examined by the commifing justice.
Does the repeal of the law providing an examining court change the law with regard to arrest and commitment? The Legislature has not thought proper to change it. Can the courts, by judicial construction, give it a meaning and force which, before the repeal of the examining court, they held did not pertain to it. The only change that has been made, and that as the result of the abolition of the examining court, is, that the commitment is now for trial; whereas before it was for examination. Rives J., in Jeter Philips’s case, 19 Gratt. 485, 522.
Under this judicial interpretation and construction of the law of arrest and commitment, which must be presumed to have been known to the Legislature, they abolished the examining court, and left the other precisely as it was. Did they intend to substitute the ex- *786 animation before a justice for the examining court? Did they intend to clothe a single justice with powers, after the accused had been solemnly indicted in one of superior courts of law, by the grand inquest of the county, for a grave criminal offence, to arrest the criminal proceeding and discharge the accused? Such could hardly have been the intention of the Legislature. And with the judicial interpretation of the clause as it stands, it could not have that effect. And if they had intended it they would, it seems to me, have changed the phraseology and enlarged the provision, so as to obviate the judicial construction and give it the proposed effect. I think, on the contrary, in the revision, in retaining the provision unchanged, they intended to retain it with the judicial construction given to it, and did not intend the absurdity of clothing the single justice with the power claimed for him. And, moreover, if they had intended that the preliminary examination before the committing magistrate should take the place of the examining court, they would have said so, and would have declared what should be the effect of his discharge: whether it should be final as in the case of the examining court. And if they had intended that it should take the place of the examining court, in amending the 34th section of chapter 208 of the Code, which provides that the prisoner shall be forever discharged, if there be three regular terms without trial “after his examination,” they would have merely inserted the words “ by a justice of the peace:” So as to read, “if there be three regular terms of such court after his examination by a justice of the peace, without a trial, &c. Instead of that they struck out the words “his examination,” and substituted the words “he is so held.” So that it reads, “if there be three regular terms of such court after he is so held without a trial,” evidently contemplating *787 that he would be committed as before, but directly for trial, instead of examination.
I deem it unnecessary to go into an analysis of these statutes. That has been so well done, so much better than I could, in the lucid opinion just delivered by my brother Moncure, that it would be a work of supererogation in me to travel over the same ground. The argument which has been made as to the importance to the prisoner, that he should have a preliminary examination, would be better addressed to the Legislature than to this forum. It might be addressed with effect, perhaps, to that body, in a proposition to restore the ■examining court, or to provide some suitable substitute for it, which I am prepared to recommend. But, if it be meant to invest a single justice of the peace with power to arrest the proceedings of the Circuit court against a person accused of crime, after an indictment found against him by the grand inquest of the county, and to discharge him, I certainly could not unite in an application to the Legislature for such a purpose.
. It is, indeed, important that the laws should be so framed and administered that the sacred rights of person—life, liberty, and property—should be secure. To this end, it is important that every safeguard to liberty should be sacredly preserved. And one of these safeguards is, that the guilty should not go unpunished. "Whilst it is a part of our humanity to commiserate the fallen, no false sympathy should prevent the faithful enforcement of the law against the guilty. This is indispensable, if we would give security to the rights of person, and preserve the safety and purity of society.
It is not the province of thiscoux’t to decide upon the guilt or innocence of the accused. And nothing that has fallen from me is intended to give any intimation of an opinion on that subject. It is my wish that he should have every right and privilege upon his trial to which he is entitled by the law of the land. *788 (And I am gratified to know that the defect of the law, ^ ^a^n8’ away the right to an examining court, with-providing a substitute, will in his case be cornpensated under the decision of this court: as, upon a-second trial, he will have the benefit of the previous-examination which he has had in the first.)
I had not intended saying a word upon this question beyond the announcement of my opinion, as the very full, able and lucid opinion of the President, I think, fully sustains that opinion. But, after hearing-the-very elaborate opinion of my brother Staples last night-for the first time, which gives such prominence to this question, I felt that something more might be required of me than the simple announcement of my opinion. I concur in the opinion of the President.